FILED BY CLERK

DEC 19 2012

COURT OF APPEALS
DIVISION TWO

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| In re the Marriage of: | ) | 2 CA-CV 2012-0076 |
| | ) | DEPARTMENT A |
| EDWIN H. JOHNSON, | ) | |
| | ) | O P I N I O N |
| Petitioner/Appellee, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ROSE M. GRAVINO, | ) | |
| | ) | |
| Respondent/Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. D20050641

Honorable Wayne E. Yehling, Judge Pro Tempore

AFFIRMED IN PART
REVERSED AND REMANDED IN PART

Aboud & Aboud, P.C.
  By John Eli Aboud                                                                    Tucson
                                                    Attorneys for Petitioner/Appellee

Law Firm of Marc Mauseth
  By Marc Mauseth                                                                     Tubac
                                                    Attorney for Respondent/Appellant

H O W A R D, Chief Judge.

¶1      Appellant Rose Gravino appeals from the trial court's order denying her petition to enforce the community property provisions of a decree of dissolution entered in May 2005, claiming the court erred in interpreting the provisions. She also appeals from the court's order awarding appellee Edwin Johnson attorney fees, claiming the court erred by not providing a statutory basis for the award in its order. For the following reasons, we affirm in part and reverse in part.

**Factual and Procedural Background**

¶2      The underlying facts and procedural background are undisputed. Rose Gravino and Edwin Johnson's marriage was dissolved in May 2005. During the dissolution proceeding, the parties negotiated a property settlement agreement, which the court approved as a fair and equitable agreement and merged into the decree of dissolution. The agreement provided that Gravino would receive certain assets and liabilities, including property located on Glenn Street in Tucson pursuant to a quit claim deed. The provision regarding the Glenn property provided that Gravino "will assume payment of the mortgage taxes and insurance," and the "mortgage will be paid off upon completion of construction and the sale of [property on] Ocean Lane," located in Imperial Beach, California. The agreement also provided Johnson would receive a quit claim deed for the Ocean Lane property and he would "assume payment of the mortgage, taxes and insurance." The agreement further stated Gravino would receive title to property on Ebony Avenue in Imperial Beach, California, which would be sold, with proceeds going to pay off another of her properties and the remainder being used for completion of two of Johnson's properties, including the Ocean Lane property.

2

¶3    In April 2011, Gravino filed a motion requesting the court to enter a judgment against Johnson for the balance of the mortgage on the Glenn property, plus interest at a rate of ten percent per annum, based on Johnson's sale of the Ocean Lane property in February 2011. Gravino also requested attorney fees pursuant to A.R.S. § 12-341.01(A) and costs. Because Johnson failed to respond, the court entered a default judgment in favor of Gravino.

¶4    Later, Johnson moved to set aside the default judgment and to quash Gravino's writs of garnishment initiated to collect the judgment, and requested a hearing. After further briefing by both parties, the trial court held a hearing, set aside the default judgment in its entirety, and quashed all writs of garnishment. The court also deemed Gravino's motion for judgment to be a petition to enforce the community property provisions of the decree. Both parties submitted additional briefs and a hearing was held in January 2012. The court took the matter under advisement and entered a ruling and order on March 22 denying the relief requested by both parties, but deciding Johnson should be awarded some of the attorney fees he incurred in setting aside the default judgment against him. The court based this decision on its reasoning that Gravino's motion for judgment did not comply with the Rules of Family Law Procedure. The court ordered Johnson to file affidavits regarding his fees, which he did, citing A.R.S. §§ 25-324 and 12-341 as the statutory bases for the award. Before the court decided the attorney fees issue, Gravino filed a notice of appeal on April 16. After additional briefing by both parties, on June 7 the court awarded Johnson $9,000 in attorney fees and entered a final judgment on June 19. As part of its ruling, the court determined the notice of

3

appeal was premature and therefore did not divest it of jurisdiction.  On June 29, Gravino filed a supplemental notice of appeal challenging the court's order denying her requested relief in her petition to enforce the community property provisions of the decree and its order awarding Johnson attorney fees.

## Jurisdiction

**¶5**        Gravino provides only a cursory statement claiming we have jurisdiction over this appeal without citing to any authority as required by Rule 13(a)(3), Ariz. R. Civ. App. P., and Johnson claims we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1), (2).[1]  However, we have an independent duty to determine our own jurisdiction, *Sorensen v. Farmers Ins. Co. of Ariz.*, 191 Ariz. 464, 465, 957 P.2d 1007, 1008 (App. 1997), which is prescribed by statute; we have no authority to entertain an appeal over which we do not have jurisdiction, *see Hall Family Props., Ltd. v. Gosnell Dev. Corp.*, 185 Ariz. 382, 386, 916 P.2d 1098, 1102 (App. 1995).  Pursuant to § 12-2101(A)(1), we have jurisdiction for an appeal "[f]rom a final judgment," which is one that "'dispose[s] of all claims and all parties.'"  *Maria v. Najera*, 222 Ariz. 306, ¶ 5, 214 P.3d 394, 395 (App. 2009), *quoting Musa v. Adrian*, 130 Ariz. 311, 312, 636 P.2d 89, 90 (1981).

---

[1]Johnson's brief cites to a former version of § 12-2101 with different numbering.  *See* 1973 Ariz. Sess. Laws, ch. 75, § 10; 2011 Ariz. Sess. Laws, ch. 304, § 1.  We refer to the corresponding sections in the current statute.

¶6        Once the appellant files a notice of appeal, the appeal is perfected.[2] *See* Ariz. R. Civ. App. P. 8(a) & cmt.  Our supreme court has held that once perfected, the trial court loses "jurisdiction of each and every matter connected with the case, except in furtherance of the appeal." *In re Lopez*, 97 Ariz. 328, 330-31, 400 P.2d 325, 326 (1965), *quoting Navajo Realty Co. v. County Nat'l Bank & Trust Co.*, 31 Ariz. 128, 135-36, 250 P. 885, 887 (1926).  Because the lower court loses jurisdiction once the appeal is perfected, any action it takes after perfection, other than in furtherance of the appeal, is void.  *Id.* (after perfection "'no discretion in the trial court for a determination of any sort as to the merits, the grounds or the timeliness of the filing of the appeal'"), *quoting Baragan v. Eyman*, 93 Ariz. 227, 230, 379 P.2d 900, 902 (1963).

¶7        But our supreme court later has acknowledged the rule divesting the trial court of jurisdiction upon the filing of a notice of appeal is not absolute and there are "'many equally well established exceptions.'"  *Continental Cas. Co. v. Indus. Comm'n*, 111 Ariz. 291, 294, 528 P.2d 817, 820 (1974), *quoting Castillo v. Indus. Comm'n*, 21 Ariz. App. 465, 467, 520 P.2d 1142, 1145 (1974).  In *Continental*, the supreme court adopted our reasoning in *Castillo* stressing the rationale behind the general rule, which

---

[2]Before a change in the procedural rules in 1978, perfecting an appeal required both filing a notice of appeal and posting a bond for costs.  *See* 116 Ariz. XXXII-XXXIII, XLII (1978); *Kiefer v. May*, 22 Ariz. App. 567, 569, 529 P.2d 721, 723 (1974), *superseded in part by* Ariz. R. Civ. App. P. 8(a), *as recognized in Riendeau v. Wal-Mart Stores, Inc.*, 223 Ariz. 540, ¶ 8, 225 P.3d 597, 599 (App. 2010).  However, the comment to Rule 8(a) now makes clear that only the timely filing of a notice of appeal is jurisdictional.  Therefore timely filing is all that is required to achieve perfection of an appeal. *See* Ariz. R. Civ. App. P. 8(a) cmt.

we stated was meant to protect the "'jurisdiction of this court when properly invoked.'" *Id.*, *quoting Castillo*, 21 Ariz. App. at 467, 520 P.2d at 1144.

**¶8**      More recently, our supreme court held that a notice of appeal is premature if there are any unresolved claims when the notice is filed and all premature notices of appeal are ineffective and a nullity, with one exception not relevant here. *Craig v. Craig*, 227 Ariz. 105, ¶ 13, 253 P.3d 624, 626 (2011). We have noted the purpose behind this rule is to give trial courts a bright-line rule that will make their jurisdiction clear and easy to determine and avoid disruptions to the trial process. *Santee v. Mesa Airlines, Inc.*, 229 Ariz. 88, ¶¶ 3-4, 270 P.3d 915, 916 (App. 2012).

**¶9**      In considering our own jurisdiction, this court has held that, when no real question concerning the invalidity of the notice of appeal exists, the trial court may determine whether it has jurisdiction to proceed even after a notice of appeal has been filed. *See Schultz v. Hinshaw*, 18 Ariz. App. 557, 557-58, 504 P.2d 498, 498-99 (1972); *Yaeger v. Vance*, 20 Ariz. App. 399, 400-01, 513 P.2d 688, 689-90 (1973); *see also Burke v. Gottfried*, 7 Ariz. App. 96, 97, 436 P.2d 488, 489 (1968) ("The trial court does not lose jurisdiction in the face of an appeal from a non-appealable order."). In *Schultz*, we reviewed whether the lower court has jurisdiction to strike a notice of appeal, thereby dismissing the appeal. 18 Ariz. App. at 557-58, 504 P.2d at 498-99. We found that directly dismissing the notice of appeal interfered with the appeal, which is not allowed under *Lopez*. *Id.* at 557, 504 P.2d at 498; *see Lopez*, 97 Ariz. at 331, 400 P.2d at 326-27. But we held that as long as the court was not striking the notice of appeal, the court may determine its own jurisdiction if the issue of jurisdiction is clear. *Schultz*, 18 Ariz. App.

6

at 557-58, 504 P.2d at 498-99. But if the issue of jurisdiction is "'fairly debatable'" the court "'should wait for this court to rule.'" *Id*., *quoting Burke*, 7 Ariz. App. at 97-98, 436 P.2d at 489-90 (appellate courts must decide any issue about whether order appealable).

¶10         Our holding in *Schultz* is consistent with the majority of other jurisdictions that have considered this question. In *Woznicki v. Musick*, 94 P.3d 1243, 1246 (Colo. App. 2004), the Colorado Court of Appeals reasoned appellate courts have no jurisdiction to consider the merits of an appeal in the absence of a final order or judgment, and therefore jurisdiction must remain in the trial court.[3] Although the filing of a notice of appeal generally divests the trial court of jurisdiction, it continued, that rule need not require divesting the court of jurisdiction when any notice of appeal is filed. *Id.* To do so would hamper, rather than aid, the administration of judicial process by transferring control from the courts to the parties, leaving the courts "powerless to prevent delays" and dilatory tactics, "obstruct[ing] the nonappealing party's right to continuing trial court jurisdiction, and inhibit[ing] the smooth and efficient functioning of the judicial process." *Id.* Accordingly, the court held premature notices of appeal do "not render void for lack of jurisdiction acts of the trial court taken during the interval between the filing of the invalid notice of appeal and the dismissal of the appeal." *Id.* at 1247. Other courts have employed similar reasoning in reaching the same conclusion. *See, e.g.*, *Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1106-07 (8th Cir. 1999); *Smiley v.*

---

[3]We note the rules of civil procedure in Arizona, Colorado, and the federal courts are substantially similar concerning appeals taken from judgments. *Compare, e.g.*, Ariz. R. Civ. P. 54(b) *with* Colo. R. Civ. P. 54(b) *and* Fed. R. Civ. P. 54(b).

7

*Atkinson*, 280 A.2d 277, 281-82 (Md. Ct. Spec. App. 1971); *Montana ex rel. Adamson v. District Court*, 279 P.2d 691, 694-95 (Mont. 1955).

¶11        A notice of appeal that is ineffective and a nullity under *Craig* should not interrupt the trial court proceedings. Our jurisdiction must be protected only when properly invoked. When, as here, the notice of appeal is so clearly premature, allowing the trial court to find the notice of appeal a nullity under *Craig*'s bright-line rule would enhance the administration of the judicial process by removing cost and delay,[4] further *Craig*'s goal of avoiding disruptions to the trial process, and allow the court to resolve cases on the merits in the first instance. If one of the parties believes the trial court wrongly attempted to retain jurisdiction, it could request special action relief from this court. Further, an aggrieved party still could appeal by filing a timely supplemental notice of appeal. And it would be consistent with the reasoning of the majority of jurisdictions that have interpreted a similar system of procedural and jurisdictional rules. Accordingly, we hold that a clearly premature notice of appeal is a nullity and the trial court does not lose jurisdiction of the case.

¶12        However, if there is any fairly debatable question whether the notice of appeal is premature under *Craig*, the trial court must stay its proceedings and let this court decide the matter. Furthermore, although the rules of civil procedure provide for a gap of several months between the notice of appeal and completion of briefing, if the trial

---

[4]The standard timeframe before a case is submitted to the court of appeals for decision is 155 days. *See* Ariz. R. Civ. App. P. 11(a), 12(a), 15(a). Even in ideal circumstances, our review could take an additional month or more and would result only in a statement that we lack jurisdiction.

8

court intends to proceed, it should send this court notice of its intent to retain jurisdiction and continue proceedings, so we may stay our own proceedings and prevent two courts working on the same case at the same time. We presume the parties will file either a special action, a motion to dismiss the appeal, or otherwise inform this court that the trial court is proceeding on the case.

¶13 Our holding here is distinguishable from our recent decision in *In re Marriage of Flores and Martinez*, No. 2 CA-CV 2012-0073, 2012 WL 5870408 (Ariz. Ct. App. Nov. 20, 2012). In *Flores*, the trial court allowed the appeal to proceed until we issued a memorandum decision, although the appellant had entered a clearly premature notice of appeal. *Id.* ¶¶ 4-5. After we issued our decision dismissing for lack of jurisdiction, but before issuance of the mandate, the trial court signed a new order, from which the same party attempted to appeal. *Id.* We determined the new order was void for lack of jurisdiction because the mandate had not yet issued, and therefore was not appealable. *Id.* ¶¶ 11-12. There, the trial court had not attempted to retain jurisdiction due to the premature notice and we had exercised our jurisdiction. Accordingly, jurisdiction did not revest in the trial court until our mandate issued. *See* Rule 24, Ariz. R. Civ. App. P.; *Flores*, 2012 WL 5870408, ¶ 10; *Borrow v. El Dorado Lodge, Inc.*, 75 Ariz. 218, 220, 254 P.2d 1027, 1028-29 (1953) ("[A]ppellate court's judgment or order becomes effective [as of] the date of issuance of the mandate."). But our holding today provides only a narrow exception for when the trial court proceeds despite a clearly void notice of appeal and makes explicit that it is doing so. It has no impact on the trial

9

court's jurisdiction when the court declines to make an initial determination about the validity of the notice of appeal and lets the entire appellate process commence.

¶14        In this case, the trial court entered an order disposing of all issues with the exception of attorney fees on March 22.  Gravino filed a notice of appeal on April 16 contesting that order.  On June 7, the court correctly determined the notice of appeal was premature and therefore did not divest it of jurisdiction because the claim for attorney fees was unresolved and its original order did not contain certification under Rule 78(b), Ariz. R. Fam. Law P.  *See Craig*, 227 Ariz. 105, ¶ 13, 253 P.3d at 626; Ariz. R. Fam. Law P. 78(b) (claim for attorney fees may be considered separate from related judgment). The court then went on to award attorney fees to Johnson.  On June 29, Gravino filed a supplemental notice, appealing both the March 22 and June 7 orders.  Because the first notice of appeal was a nullity, the trial court had jurisdiction to complete the case and enter a final, appealable judgment and we therefore have jurisdiction of the appeal. Accordingly, we turn to the merits.

### Property Settlement Interpretation

¶15        Gravino first contends the trial court erred by misinterpreting the community property provisions of the decree dissolving their marriage in 2005, arguing the court incorrectly found that Johnson was not required to pay off the mortgage on the Glenn property after he sold the Ocean Lane property.  Johnson contends that we should review the court's interpretation of the decree for an abuse of discretion, but fails to explain why the clear language of *Cohen v. Frey*, 215 Ariz. 62, 157 P.3d 482 (App. 2007), is not controlling.  In *Cohen* we stated, "We review the trial court's interpretation

10

of an existing decree of dissolution de novo." 215 Ariz. 62, ¶ 10, 157 P.3d at 486. We have not deviated from this standard of review since articulating it. *See, e.g.*, *Merrill v. Merrill*, 230 Ariz. 369, ¶ 7, 284 P.3d 880, 883 (App. 2012); *Palmer v. Palmer*, 217 Ariz. 67, ¶ 7, 170 P.3d 676, 678-79 (App. 2007); *see also Danielson v. Evans*, 201 Ariz. 401, ¶ 13, 36 P.3d 749, 754 (App. 2001) (when court interprets ambiguous decree of other court, review of interpretation de novo). Accordingly, we apply de novo review in this case.

**¶16** "A final judgment or decree is 'an independent resolution by the court of the issues before it and rightfully is regarded in that context and not according to the negotiated intent of the parties.'" *Cohen*, 215 Ariz. 62, ¶ 10, 157 P.3d at 486, *quoting In re Marriage of Zale*, 193 Ariz. 246, ¶ 11, 972 P.2d 230, 233 (1999). To interpret the decree, we use general rules of construction for written instruments. *Id.* ¶ 11. But we may not consider parol or extrinsic evidence. *Zale*, 193 Ariz. 246, ¶¶ 10-15, 972 P.2d at 233-34. First, we must determine if the decree is ambiguous. *Cohen*, 215 Ariz. 62, ¶ 11, 157 P.3d at 486. A decree is ambiguous "only when [its language] can reasonably be construed to have more than one meaning." *In re Estate of Lamparella*, 210 Ariz. 246, ¶ 21, 109 P.3d 959, 963 (App. 2005). Whether multiple constructions of the same language are reasonable is a question of law. *Cohen*, 215 Ariz. 62, ¶ 11, 157 P.3d at 486.

**¶17** Further, we construe language in a decree "according to [its] natural and legal import," in the context of its related provisions. *Lopez v. Lopez*, 125 Ariz. 309, 310, 609 P.2d 579, 580 (App. 1980); *see also Zale*, 193 Ariz. 246, ¶ 17, 972 P.2d at 234. We also must construe a document provision in a manner that would not render any other part

11

meaningless. *Cohen*, 215 Ariz. 62, ¶ 12, 157 P.3d at 486; *Lopez*, 125 Ariz. at 310, 609 P.2d at 580 ("The intention of the court must be determined from all parts of the judgment."); *Stine v. Stine*, 179 Ariz. 385, 388, 880 P.2d 142, 145 (App. 1994). In construing the language of the decree, we also must be cognizant that a court may not adopt a dissolution agreement into a decree without first determining that the agreement divides "the marital property fairly and equitably." *Cohen*, 215 Ariz. 62, ¶ 14, 157 P.3d at 487.

¶18        The language of the decree at issue here regarding the Glenn property states, in pertinent part: "The following assets and liabilities will go to Rose M. Gravino . . . [the property on] Glenn St . . . . She will assume payment of the mortgage taxes and insurance. This mortgage will be paid off upon completion of construction and the sale of [the property on] Ocean Lane, Imperial Beach, CA." Concerning the Ocean Lane property, the decree states: "The following assets and liabilities will go to Edwin H. Johnson . . . [the property on] Ocean Lane: He will assume payment of the mortgage, taxes and insurance."

¶19        We agree with the trial court that the language of the decree is ambiguous. Because the decree uses passive voice, we are unable to determine from its language which party must pay off the mortgage and what funds that party must use to do so. Gravino argues the language indicates Johnson was required to pay off the mortgage on the Glenn property in full after selling the Ocean Lane property. Johnson argues there was no ambiguity in the language, that its plain language was meant to reciprocally bind the parties so they would both have incentives to keep the respective mortgage payments

12

current, and that the provision only concerned when Gravino was required to pay off the mortgage on the Glenn property. At issue in this case, therefore, is the interpretation of the language "will be paid off" in this provision of the decree.

¶20 Because we cannot answer who was required to pay off the loan or with what funds based on the plain language of the provision, we look to related provisions of the decree for guidance. *Zale*, 193 Ariz. 246, ¶ 17, 972 P.2d at 234. "[W]here a certain word or phrase is used several times in a contract, and in one case its meaning is plain and definite, while in another place no definition is given, it will be presumed that it is used in the same sense in both places." *Miller Cattle Co. v. Mattice*, 38 Ariz. 180, 188, 298 P. 640, 643 (1931); *but see State ex rel. Goddard v. R.J. Reynolds Tobacco Co.*, 206 Ariz. 117, ¶¶ 21-24, 75 P.3d 1075, 1079-80 (App. 2003) (same meaning rule does not override other canons of construction). A few paragraphs above the one at issue in the decree, the agreement states that property on Rio Verde Vista Drive in Tucson "will be paid off upon the sale of [the property on] Ebony Ave[nue]." That language also does not describe in what manner the mortgage "will be paid off." However, the description of the Ebony Avenue property in a subsequent paragraph states "Proceeds from this sale will go to paying off the mortgage on [the property on] Rio Verde Vista Drive. [T]he balance will go to Edwin Johnson for the completion of [a different property on] Glenn Street and . . . Ocean Lane." Even in the absence of such a clear description of the sale of the Ocean Lane property, the most natural reading of the language concerning the Glenn property is to give it a similar meaning as the identical language used in the surrounding paragraphs. Upon the sale of the Ebony Avenue property, the proceeds were to go

13

toward the mortgage that was to be "paid off" with the remainder going to property under Johnson's control. Similarly construing the connection between the Glenn and Ocean Lane properties would require the proceeds from the sale of the Ocean Lane property to be applied to the mortgage on the Glenn property, with Johnson retaining any balance.

¶21 This interpretation offers a parallel meaning to the same language that is separated by only a few paragraphs. It also recognizes that funds flowed from Gravino's Ebony property into the Ocean Lane property. This would produce an equitable distribution of the marital assets at the time the decree was entered, as *Cohen* requires, because it provides Johnson with capital to develop the Ocean Lane property from property awarded to Gravino, but in turn provides that the sale of the Ocean Lane property would also benefit Gravino by helping to extinguish the mortgage on the Glenn property. 215 Ariz. 62, ¶ 14, 157 P.3d at 487. It thus gives a consistent meaning to the language "will be paid off." We agree with the trial court that the "idea in both cases was not so much that a party would pay off a mortgage, but that the proceeds from sale of one property would pay off the mortgage on another."

¶22 But we disagree with the trial court's conclusion that neither party was required "to pay off the mortgage on the Glenn Street Property unless the Ocean Lane Property was developed and sold for enough to recoup the original investment in the Property, subsequent investment costs, and the mortgage on the Property." We can find no language in the decree, or any inference that we could draw from its language, that would suggest Johnson would not be required to apply the proceeds of the sale of the Ocean Lane property to the Glenn property mortgage unless the proceeds of the sale were

14

enough first to cover his original and subsequent investment costs in addition to the mortgage on the Ocean Lane property. This interpretation would be particularly unfair given that a portion of those investment costs were to come from proceeds of the sale of the Ebony Avenue property awarded to Gravino. The language in the other paragraphs does not require that investment costs be recouped before applying the proceeds of the sale to the mortgages.

¶23         The trial court apparently concluded it had a duty to interpret the decree in a manner that makes the division of the property and debts fair and equitable based on the current situation between the parties. In reaching this conclusion and interpreting the decree, the court relied principally on Johnson's testimony, but as noted above, when interpreting a decree the court may not consider parol or extrinsic evidence. *Zale*, 193 Ariz. 246, ¶¶ 10-15, 972 P.2d at 233-34. Moreover, the correct standard of review for a decree already in effect is for the court to interpret the decree consistently with the language of the decree, which is presumed equitable when entered, not to readjust the equities after the fact in light of new circumstances. *Cohen*, 215 Ariz. 62, ¶ 14, 157 P.3d at 487. Accordingly, the trial court erred as a matter of law in its interpretation of the decree.

¶24         Because the trial court erred by interpreting the decree not to require Johnson to use the proceeds from the sale of the Ocean Lane property to pay off the mortgage of the Glenn property, we remand this case for the court to determine the amount of proceeds from the sale of the Ocean Lane property that should be applied to the Glenn property mortgage.

15

**Attorney Fees**

¶25 Gravino next appears to argue the trial court erred in awarding Johnson attorney fees without specifying the statutory basis in its order. To the extent she intends to raise this as an issue on appeal, however, Gravino failed to raise this argument below. Absent extraordinary circumstances, errors not raised in the trial court cannot be raised on appeal because the court and opposing counsel should have the opportunity to correct any asserted errors or defects. *Trantor v. Fredrikson*, 179 Ariz. 299, 300, 878 P.2d 657, 658 (1994). Further, if Gravino had raised this argument below, the court would have either specified the statute under which the fees were awarded, or it would have failed to do so, preserving this issue for appeal. *See id.* at 301, 878 P.2d at 659. Accordingly, Gravino has waived this argument.

¶26 Gravino further contends that if the trial court awarded Johnson attorney fees under A.R.S. § 12-341.01(A), the statute she asserts is the most commonly used "fee shifting" statute, it does not apply here because there was no "prevailing party" as indicated in the court's previous order. But in the trial court, Johnson's affidavit relied on A.R.S. § 25-324. Because Gravino did not argue in her opening brief the court erred in relying on § 25-324, that argument is waived. *See* Ariz. R. Civ. App. P. 13(a)(6) (appellant's opening brief must set forth "[a]n argument which shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on"); *Best v. Edwards*, 217 Ariz. 497, ¶ 28 & n.7, 176 P.3d 695, 702 & n.7 (App. 2008) (appellant's failure to address alternative grounds for trial court order in opening brief may constitute

16

waiver of argument). Although she argues in her reply brief that the court erred if it awarded Johnson fees under § 25-324, because her position was not unreasonable according to the previous judge assigned to the case, we do not review arguments presented for the first time in the reply because it deprives the other party of the opportunity to respond. *See Varsity Gold, Inc. v. Porzio*, 202 Ariz. 355, ¶ 9, 45 P.3d 352, 354 (App. 2002) (arguments raised for first time in reply brief deprive other party opportunity to respond and are deemed waived).

¶27    Because we are reversing the trial court's order, we ordinarily would reverse the award of attorney fees as well. But the trial court appeared to be awarding Johnson attorney fees as a sanction under Rule 71, Ariz. R. Fam. Law P., because the court specified Gravino's motion for a default judgment "significantly failed to comply with the Rules of Family Law Procedure." And Rule 71 allows the court to impose sanctions on its own initiative if it finds that a party failed to comply with the Rules of Family Law Procedure. Gravino has failed to show the court abused its discretion in awarding Johnson fees. *See Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, ¶¶ 17-18, 99 P.3d 1030, 1035 (App. 2004) (court has discretion to award attorney fees and we will not disturb award absent abuse of discretion). Accordingly, we uphold the court's award of attorney fees although we reverse the court's order interpreting the decree in Johnson's favor because the fee award appeared to be awarded under Rule 71, and thus unrelated to the outcome of the court's interpretation of the decree. Because Gravino waived this argument on appeal, we do not further address the merits of this award.

**¶28** Additionally, we deny Gravino's request for an award of attorney fees on appeal because she fails to cite any authority supporting her request. *See Ezell v. Quon*, 224 Ariz. 532, ¶ 31, 233 P.3d 645, 652 (App. 2010); *see also* Ariz. R. Civ. App. P. 21(c)(1). Johnson also requests attorney fees on appeal as the successful party to an action arising out of a contract, pursuant to A.R.S. § 12-341.01 and for the "unreasonable positions taken by [Gravino] in these proceedings," pursuant to § 25-324. He also requests costs pursuant to Rule 21, Ariz. R. Civ. App. P. Because we find in Gravino's favor and accordingly find her position reasonable, we deny his requests.

### Conclusion

**¶29** For the foregoing reasons, we reverse and remand in part and affirm in part.

/s/ *Joseph W. Howard*
_____
JOSEPH W. HOWARD, Chief Judge

CONCURRING:

/s/ *Peter J. Eckerstrom*
_____
PETER J. ECKERSTROM, Presiding Judge

/s/ *Garye L. Vásquez*
_____
GARYE L. VÁSQUEZ, Judge

18