NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

MICHAEL A. SERVIN JR.,
*Petitioner/Appellant*,

*v.*

THE STATE OF ARIZONA, EX REL. THE DEPARTMENT OF
ECONOMIC SECURITY (CHRISTINA E. QUEZADA),
*Respondents/Appellees*.

No. 1 CA-CV 24-0393 FC

FILED 01-15-2026

Appeal from the Superior Court in Maricopa County
No.  FC2017-002176
The Honorable Robert Ian Brooks, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

APPEARANCES

Michael A. Servin Jr., Surprise
*Petitioner/Appellant*

Arizona Attorney General's Office, Phoenix
By Amber E. Willow
*Counsel for Respondents/Appellees*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge David B. Gass and Judge Andrew J. Becke joined.

---

**B R O W N**, Judge:

¶1         Michael Servin Jr. ("Father") appeals the superior court's orders modifying his child support obligation and denying his Arizona Rule of Family Law Procedure ("Rule") 83 motion to amend. We affirm Father's monthly child support obligation, but we vacate the arrearage judgment and remand for recalculation.

## BACKGROUND

¶2         This is the third appeal arising from the 2017 divorce proceeding between Father and Christina Quezada ("Mother"), who have two minor children. *See Servin v. Servin*, 1 CA-CV 21-0217 FC, 2022 WL 1087674 (Ariz. App. Apr. 12, 2022) (mem. decision); *Servin v. Quezada*, 1 CA-CV 24-0006 FC, 2024 WL 4602042 (Ariz. App. Oct. 29, 2024) (mem. decision). As relevant here, in January 2021 the superior court ordered Father to pay Mother $812 per month for child support. Father petitioned to modify the award five months later, asserting his obligation should be reduced because he had "separated from the military." In September 2023, the court held an evidentiary hearing on the petition, along with numerous other filings from both parties. The court ultimately denied Father's petition and that ruling  ("November 2023 ruling") was the focus of the second appeal, *Quezada*, 1 CA-CV 24-0006 FC.

¶3         Before filing his notice of appeal in that case, Father again petitioned to modify child support, using the simplified procedure in the Arizona Child Support Guidelines. *See* A.R.S. § 25-320 app. ("Guidelines") § XIV.C. He claimed his sole income now came through disability benefits from the U.S. Department of Veteran Affairs, and Mother's income had increased, so his child support obligation should be reduced to $441 per month. Later that month, Father also petitioned to enforce parenting time orders and moved for sanctions, alleging in part that Mother was not cooperating with him to facilitate parenting time. According to his declaration of service, Father served these documents on Mother in January 2024. Mother separately moved for contempt and enforcement of child

support and arrearages, among other issues. The superior court set an evidentiary hearing in March of that year to resolve the various issues raised in the filings. Before the hearing, the Arizona Department of Economic Security ("ADES") appeared in this litigation under Title IV-D of the Social Security Act, 42 U.S.C. §§ 651–669b and provided a child support arrears calculation showing Father owed Mother $17,476.

¶4            At the hearing, Father asked the court to find his monthly income to be $3,944.95, even though his federal paperwork indicated his disability benefits were $4,825.88. According to Father, the difference in these figures reflected that a portion of these benefits were allocated only to him and his current wife, and another portion (about $200) was intended for their two minor children. Father also testified he pays $77.04 per month in health insurance costs for the two children he shares with Mother. Mother testified about her hourly wage and her own monthly health insurance payments ($223.63) she makes for the children. Though Mother said she was not required to pay for insurance, she did so to minimize the expenses for the children by supplementing the amount of coverage the children have through her insurer.

¶5            The superior court issued an order ("March 2024 order") reducing Father's child support obligation, finding that Father proved a material change in circumstances justifying modification. Though the court noted Father's decrease in income was not sufficient alone to warrant modification, the court determined Mother's income had increased substantially. In its child support worksheet, the court found Father had a monthly income of $4,625.88, reflecting a $200 reduction from Father's disability benefits based on the financial support Father provides for his wife's children. The court also included both parents' insurance costs in calculating the total child support obligation for the parties. After performing the relevant calculations, the court lowered Father's monthly child support obligation to $559, effective April 1, 2024. The court also entered an arrears judgment for Mother reflecting the amount in the State's calculation and ordered Father to pay an additional $100 per month towards the arrears.

¶6            Father moved to alter the judgment under Rule 83, asserting the effective date of modification should have been February 1, 2024, and the court erred in including Mother's insurance costs in its child support calculation. The court granted Father's motion as to the effective date of modification but otherwise affirmed its orders. Father timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(2).

¶7 While Father's appeal was pending, a different panel of this court issued a decision in the second appeal, *Quezada*, No. 1 CA-CV 24-0006 FC, concluding that evidence in the record established a substantial change in circumstances warranting modification, and thus vacating the superior court's denial of Father's petition to modify the November 2023 ruling. This court stayed the current appeal in case the ruling on remand affected the child support orders at issue. The superior court resolved the matter of Father's past child support in a series of rulings entered in May through June 2025. This court then allowed the parties to provide supplemental briefing "limited to addressing the effects" of the superior court's most recent order on the instant matter; only Father submitted a supplemental brief.

## DISCUSSION

¶8 We review the superior court's ruling on a petition to modify child support for an abuse of discretion; "[a]n abuse of discretion exists when the record, viewed in a light most favorable" to affirming the court's ruling, lacks competent evidence to support the decision. *Little v. Little*, 193 Ariz. 518, 520, ¶ 5 (1999). We accept the court's factual findings unless they are clearly erroneous but review any interpretation of the Guidelines de novo. *Birnstihl v. Birnstihl*, 243 Ariz. 588, 590–91, ¶ 8 (App. 2018).

¶9 We first note the problems with Father's briefing, which fails to comply in any meaningful way with appellate court rules. He does not plainly articulate his concerns with the court's March 2024 child support order, and most of the points he appears to be raising lack "citations of legal authorities and appropriate references to the record" to support his various contentions. ARCAP 13(a)(7)(A). Though Father does include citations to several statutes and various rules, he does not tie these citations to his specific contentions on appeal.

¶10 Second, Father directs most, if not all, of his arguments toward the November 2023 ruling.[1] But that ruling was the subject of a

---

[1] In his combined supplemental/reply brief, Father seems to direct more of his arguments toward the March 2024 order. But we do not consider new arguments raised in that briefing. Instead, we consider the points Father makes in the combined supplemental /reply brief to help us discern the relevant arguments he seems to be making in his opening brief, but to the extent he raises new issues, they are waived. *See In re Marriage of*

different appeal (the second one), and a separate panel of this court already addressed the merits of that order. *See Quezada*, No. 1 CA-CV 24-0006 FC. The focus of this appeal is the superior court's March 2024 order modifying Father's child support obligation.

**¶11** Considering such deficiencies, we may conclude that Father waived all issues and abandoned his appeal. *See Ramos v. Nichols*, 252 Ariz. 519, 523, ¶¶ 10–11 (App. 2022). However, in our discretion, we decline to do so. We will address what arguments we can distill from Father's briefing, but we also adhere to the principle that it is not this court's duty to develop a party's arguments on appeal or to search a voluminous record to find reasons justifying reversal. *See Nationwide Res. Corp. v. Massabni*, 134 Ariz. 557, 565 (App. 1982); *Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 119 (1966).[2]

## A. Effective Date of Modification

**¶12** Father seems to argue the court selected the wrong date for when his modification was effective. According to Father, because he filed his petition in November 2023, modification should have been effective December 1, 2023. *See* A.R.S. § 25-503(E) ("Modification . . . [is] effective on the first day of the month following notice of the petition for modification . . . unless the court, for good cause shown, orders the change to become effective at a different date but not earlier than the date of filing the petition for modification . . . ."); *see also* § 25-327(A).

**¶13** Father's argument fails for several reasons. Section 25-503(E) does not provide that modification may become effective the first day of the month following *filing*. Rather, it may begin on the day following *notice* of the petition. Father did not serve his petition on Mother until January 2024.

---

*Johnson and Gravino*, 231 Ariz. 228, 235, ¶ 26 (App. 2012) (explaining that arguments that are not raised in an opening brief are generally waived).

[2]   We also recognize that Mother did not file an answering brief. Though we generally would construe her failure as a confession of error of debatable issues, that rule is not mandatory in cases involving the best interests of children. *See Hoffman v. Hoffman*, 4 Ariz. App. 83, 85 (1966); *Sherman v. Sherman*, 241 Ariz. 110, 113, ¶ 10 (App. 2016) ("The paramount factor a trial court must consider when applying the Guidelines is the best interest of the child." (citation modified)). Even so, because Father failed to establish any debatable issues, we do not treat the lack of an answering brief by Mother as a confession of error.

Thus, under the statute, February 1, 2024 was the earliest date on which the modification could take effect. Moreover, in his Rule 83 motion, Father explicitly asked the court to make modification effective of February 1, and the superior court agreed. So even if the court erred in selecting that date, Father invited the error. *See In re Marriage of Thorn*, 235 Ariz. 216, 224, ¶ 35 (App. 2014) ("Having successfully persuaded the court to follow this approach, he cannot now argue it was erroneous.").

### B.     Issues Related to Income Calculation

**¶14**          Father points to several issues regarding the parents' income the superior court included in its child support order. He first claims Mother committed fraud on the court. In his supplemental brief, he argues that evidence presented at the May 2025 hearing shows that Mother mispresented her income at the time of the March 2024 hearing. Father waived this argument because it is beyond the purpose for which this court allowed supplemental briefing. *See Willis v. Bernini*, 253 Ariz. 453, 458, ¶ 13 (2022). Even so, his argument is unavailing. If Father believed this evidence contradicted the evidence the court used in preparing the March 2024 child support order, he needed to raise the issue with the superior court. *See* Ariz. R. Fam. L. P. 85(b), (d)(3). Because the record before us contains no indication Father did so, we decline to consider the issue. *See Brookover v. Roberts Enters., Inc.*, 215 Ariz. 52, 57, ¶ 16 n.1 (App. 2007) ("This court, however, may not consider evidence not before the trial court when it considered its ruling."); *Englert v. Carondelet Health Network*, 199 Ariz. 21, 26, ¶ 13 (App. 2000) (explaining that appellate courts will generally "not consider issues, even constitutional issues, raised for the first time on appeal").

**¶15**          Father also suggests the court erred in calculating his income. He repeatedly says he receives veteran disability benefits, which "exempts" him from "any additional Court 'inferences' to additional income." It is not clear what Father means, or what inferences he is asking us to draw. To the extent he is asserting his veteran disability benefits cannot be considered as income for child support purposes, he is incorrect. *See* Guidelines § II.A.1.b. (explaining that child support income "includes income from any source" including "military disability benefits"). Without explanation, Father cites A.R.S. § 25-318.01, which prohibits a court making "a disposition of property pursuant to [A.R.S.] § 25-318 or 25-327" from considering "any federal disability benefits awarded to a veteran for service-connected disabilities." But a child support order is not a "disposition of property" under those statutes.

**¶16** As much as Father believes the court erred in calculating his monthly income at $4,625.88, we disagree. Father testified that his monthly income should be $3,944.95. That amount, according to Father, reflected what he received for himself, his wife, and the children he shares with Mother. However, the affidavit of financial information presented at trial showed his income at the time of his petition and the evidentiary hearing was $4,825.00. At trial, Father acknowledged he paid around $200 for children from another relationship. Consistent with this testimony, the court found Father's child support income was $4,625.88. Based on the child support worksheet, the court concluded his adjusted child support income was $3,352.88. Father has not explained how any of these figures are erroneous.

**¶17** Father also references the Self-Support Reserve Test ("Reserve Test") at different points in his briefing. The Reserve Test is included in the Guidelines to ensure a parent paying child support "is financially able to pay the Child Support Order and to maintain at least a minimum standard of living." Guidelines § VIII.A. The test works by taking 80% of the full-time earnings at the state minimum wage for the year in which the court is calculating child support and then deducting that Reserve Test amount from the Adjusted Child Support Income. *Id.* at § VIII.B, C. After this deduction, if the resulting amount is equal to or greater than the presumptive child support obligation as calculated by the Guidelines, the court orders child support in that amount. *Id.* at § VIII.D.1. If the resulting figure is less than this amount, the court may reduce the child support obligation accordingly. *Id.* at § VIII.D.2.

**¶18** The court determined Father's adjusted child support income to be $3,352.88 per month. ADES claims, and Father does not dispute, the Reserve Test result is $1,989.87.[3] Subtracting this amount from Father's adjusted child support income results in $1,363.01, which is well above the $559.29 in Father's ordered child support. And even if the superior court had used the figure Father provided for his income, $3,944.95, his adjusted child support income would have been $2,671.95. Applying the Reserve Test here, and subtracting $1,989.87 from this total, the result still exceeds Father's ordered child support amount ($682.08). Father has not shown the Reserve Test demands a different outcome for his child support obligation.

---

[3] This result means the relevant state minimum wage at the time was $14.35. As the Guidelines demonstrate, the appropriate equation is as follows: (14.35 x 40 (hours per week) x 52 (weeks per year)) /12 (months). The resulting figure is $2,487.33; 80% of that amount is $1,989.87.

### C.    Other Costs

**¶19**        Father also seems to take issue with the superior court's treatment of certain costs identified at the hearing.  He points to the court's decision to credit Mother with medical insurance costs for the children and to include them in the child support worksheet.  Mother testified  she paid $223.63 per month in health care insurance premiums for the children.  Though she was "not required to do so," she explained that she paid for this insurance to supplement the children's coverage.  The court included this amount in calculating the total child support obligation for the children.  Father argues this was an "unnecessary expense" and it "unreasonably increase[ed] the basic obligation of caring for the children."  But he provides no authority prohibiting a court from including such expenses in calculating child support, and nothing in the Guidelines explicitly prevents consideration of such costs.

**¶20**        Father also seems to assert the court erred by failing to include childcare costs in the child support worksheet.   At the March 2024 evidentiary hearing, he said he paid childcare costs that the court should include in his child support worksheet, but the court did not.  However, because Father has cited no authority showing the court had to include these costs, he has not shown the court abused its discretion.  *See* Guidelines, § III.B.4 ("The amount paid for childcare so a parent can work or seek employment *may* be added to the Basic Child Support Obligation." (emphasis added)).

### D.    Arrearage Judgment

**¶21**        ADES urges us to vacate the arrearage judgment in the March 2024 child support order in light of the superior court's more recent rulings concerning Father's petitions that were at issue in the November 2023 child support order.  Given that the court's 2025 rulings have likely changed the amount of Father's child supports arrears, we vacate that portion of the child support order and remand to the superior court to determine the appropriate amount of a revised arrearage judgment.  Because we vacate the arrearage judgment, we decline to address Father's arguments regarding the arrearage calculations.

**CONCLUSION**

¶22    We vacate the court's arrearage judgment and remand for an updated calculation, but we affirm the court's child support order in all other respects.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:        JR