NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

SHIRLEY A. BINDER, *Petitioner/Appellee,*

*v.*

ROGER A. BINDER, *Respondent/Appellant.*

No. 1 CA-CV 14-0688 FC
FILED 3-1-2016

Appeal from the Superior Court in Maricopa County
No.  DR1998-019510
The Honorable Michael J. Herrod, Judge

**AFFIRMED IN PART; VACATED IN PART**

COUNSEL

Law Offices of March & March, Scottsdale
By Robert A. March
*Counsel for Petitioner/Appellee*

Garrey, Woner, Hoffmaster & Peshek, PC, Scottsdale
By D. Reid Garrey, Stephanie Kwan Gintert
*Co-Counsel for Respondent/Appellant*

Jones, Skelton & Hochuli, PLC, Phoenix
By Lori L. Voepel
*Co-Counsel for Respondent/Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Patricia A. Orozco and Judge Kenton D. Jones joined.

---

J O H N S E N, Judge:

¶1             Roger A. Binder ("Husband") appeals the superior court's order granting a post-decree petition filed by Shirley A. Binder ("Wife") to enforce an order apportioning Husband's military retirement pay.  For the following reasons, we affirm in part and vacate in part.

### FACTS AND PROCEDURAL BACKGROUND

¶2             Husband and Wife divorced in 1999 after 18 years of marriage.  During the marriage, Husband accrued more than ten years of military service.  At the time of dissolution, Husband was a Lieutenant Colonel in the United States Air Force Reserve.  His earliest military retirement date was some 15 years away.

¶3             The parties prepared a marital settlement agreement, and the court entered a decree of dissolution confirming and ratifying the agreement.  Pursuant to the decree, the parties stipulated to entry of an order apportioning Husband's future military retirement (the "1999 Order").  The 1999 Order defined "MRP" to mean "[Husband's] eventual disposable military retired pay" and further provided:

> [Wife] is awarded that portion of [Husband's] MRP, and each installment thereof, resulting from application thereto of the following formula:  MRP times 50% times the fraction in which 4,849 points credited for MRP is the numerator and all points credited to [Husband] for MRP is the denominator.

The 1999 Order also provided that Wife was entitled to a "Former Spouse-type" Reserve Component Survivor Benefit Plan ("RCSBP") based on Husband's "[f]ull retired pay."  After the court entered the 1999 Order, it was filed with the Defense Finance and Accounting Service ("DFAS"), the agency administering military retirement payments.

¶4             After the dissolution, Husband continued to serve in the Air Force Reserve and was promoted to Major General, receiving

corresponding pay raises. Before Husband retired in 2013, he changed his status from reserve to active duty. Because of the change in status, DFAS was unable to process the 1999 Order.[1] As a result, DFAS began paying all of Husband's military retirement to him, rather than some portion to Wife.

¶5         In April 2014, Wife filed a petition to enforce the 1999 Order. In response, Husband argued Wife's share of his military retirement should be calculated based on his rank of Lieutenant Colonel at the time of dissolution, rather than his rank of Major General at the time of his retirement. Following oral argument, the superior court issued an order concluding that Wife was entitled to 25.8% of Husband's full retirement pay as a Major General at the time of retirement. The court further ruled that Wife was entitled to Husband's Survivor Benefit Plan ("SBP").

¶6         Husband filed a motion for new trial, which the court denied. This court has jurisdiction over Husband's timely appeal pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(2), (5)(a) (2016).[2]

## DISCUSSION

¶7         We review *de novo* questions of law, including the interpretation of an existing decree or court order. *See In re Marriage of Howell*, 238 Ariz. 407, 411, ¶ 17 (2015); *Cohen v. Frey*, 215 Ariz. 62, 66, ¶ 10 (App. 2007).

## A. Husband's Military Retirement Pay.

¶8         The Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408 (2016), authorizes state courts to divide military retirement as community property. *See* 10 U.S.C. § 1408(c); *see also Howell*, 238 Ariz. at 409, ¶ 10. Under Arizona's community property law, military retirement benefits earned during the marriage are community property subject to equitable division upon dissolution. *See Miller v. Miller*, 140 Ariz. 520, 522 (App. 1984).

---

[1]    Because Husband was in the reserve at the time, the 1999 Order calculated the community's share of Husband's MRP based on "reserve points." Husband joined active duty in 2013, and retirement pay for active-duty service people is based not on reserve points but months of service.

[2]    Absent material revision after the relevant date, we cite a statute's current version.

**¶9** At the time of dissolution, the parties entered into a property settlement agreeing that Wife was entitled to a share of Husband's military retirement, as follows:

> The parties acknowledge that they have an interest in certain military retirement pay and agree that the eventual military retirement pay shall be apportioned between the parties by a formula granting to Wife 50% of Husband's disposable military retirement pay times the fraction in which total points credited for retired pay accrued during the marriage is the numerator and total points credited toward retired pay is the denominator. Reserve Component Survivor Benefit pay should be effected for Wife as beneficiary, with full retired pay as "base amount."

**¶10** The dissolution decree "confirmed and ratified and in all respects approved . . . and incorporated" the settlement agreement. The 1999 Order contemplated by the decree was consistent with the parties' negotiated property settlement in that it specified the formula by which Husband's "eventual military retirement pay" was to be divided between Husband and Wife. *See Sharp v. Sharp*, 179 Ariz. 205, 208 (App. 1994) ("The trial court may approve a valid separation and property settlement agreement and incorporate it into the dissolution decree if the agreement is free from fraud or undue influence and if it is fair and equitable.").

**¶11** The parties agree that the proper formula to determine Wife's share is 25.8% times Husband's MRP but disagree about what MRP should be. Wife argues her percentage applies to the full amount of Husband's military retirement pay. Husband argues Wife's percentage applies to the military retirement of a Lieutenant Colonel, his rank at the time of dissolution; he contends any increase in his retirement pay, post-dissolution, is his sole and separate property. Husband reasons that "changes in both his status and rank necessarily gave rise to issues not foreseen by the parties at dissolution, so trial court involvement is required to ensure that division of the MRP conforms to both the parties' intent and Arizona community property law."

**¶12** The 1999 Order, however, specifies that Wife's share of Husband's military retirement is to be calculated based on the amount of his "eventual disposable military retired pay." We construe the Order's use of the term "eventual" as a plain reference to the amount of military retirement pay Husband actually would receive upon his future retirement, not, as Husband now contends, the amount he would have received had he

retired at the rank he held at the time of the dissolution. *See* Random House Webster's Unabridged Dictionary 671 (2001) (defining "eventual" as "happening at some indefinite future time or after a series of occurrences; ultimate" or "depending upon uncertain events, contingent").

**¶13** Husband argues that a chart attached to the settlement agreement and a letter he wrote to the lawyer who drafted the 1999 Order show that he understood that Wife's share of his retirement was to be based on his rank at the time of the dissolution. But we do not consider parol evidence when we interpret a judgment. *In re Marriage of Zale*, 193 Ariz. 246, 250, ¶ 15 (1999). As our supreme court explained in *Zale*, "[a] judgment is not an agreement between or among the parties" to be construed by reference to the parties' intent. *Id.* at 249, ¶ 10. A judgment "exists as an independent resolution by the court of the issues before it and rightfully is regarded in that context and not according to the negotiated intent of the parties." *Id.* at 249, ¶ 11.

**¶14** Citing *Schwartz v. Durham*, 52 Ariz. 256, 264 (1938), Husband argues we should interpret the order to avoid inequity. At issue in *Schwartz* was a situation far different from that presented here, however. In that case, the parties' property settlement agreement and the court's decree of dissolution did not address what turned out to be a significant asset that neither party realized the community owned. Here, by contrast, the parties knew at the time of the 1999 Order that Husband's retirement was several years away and presumably knew that, to the extent he remained associated with the military, he might advance in rank beyond Lieutenant Colonel.

**¶15** Moreover, to the extent Husband asks this court to modify the plain terms of the 1999 Order, the general rule is that a dissolution decree's "provisions as to property disposition may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state." A.R.S. § 25-327(A) (2016). As a practical matter, that means that "property settlements are not subject to modification or termination." *De Gryse v. De Gryse*, 135 Ariz. 335, 338 (1983). This rule was developed because "[t]he need for finality and stability in marriage and family law is great." *Id.*

**¶16** Contrary to Husband's argument, the occurrence of unforeseen events does not alter this rule:

> That various, post-dissolution contingencies may arise and allegedly produce inequities in a prior decree's division of

community property does not justify "disturb[ing] property allocations in final divorce decrees," . . . or upsetting parties' reasonable expectations based on those allocations. Nor do the possible ramifications of speculative future events on a prior division of property override the important policy favoring the finality of decrees and property settlements.

*Danielson v. Evans*, 201 Ariz. 401, 410, ¶ 31 (App. 2001) (quoting *In re Marriage of Gaddis*, 191 Ariz. 467, 471 (App. 1997)).

**¶17** The rule favoring the finality of the allocation of property in a dissolution decree supports the superior court's enforcement of the 1999 Order. Pursuant to the plain language of that order, Wife had a vested property interest in her share of Husband's "eventual" military retirement. *See Howell*, 238 Ariz. at 412, ¶ 21; *see also Merrill v. Merrill*, 238 Ariz. 467, 470, ¶ 16 (2015) (citing *Howell*'s discussion of vested rights). The 1999 Order did not limit Wife's share of Husband's retirement pay based on his rank or pay, nor did it provide for adjustments resulting from changes to his rank or pay. Once the decree and the 1999 Order were entered, Wife's right to her share of Husband's military retirement became final. *See Howell*, 238 Ariz. at 412, ¶ 21; *see also* 10 U.S.C. § 1408(d) (explaining DFAS's obligation to comply with a court order apportioning MRP). Husband argues that in the 1999 Order, the court expressly retained jurisdiction to modify the allocation of community property. The referenced provision states, "This Court retains jurisdiction to modify this Order, and the Decree, in order to effect the provisions hereof." It affords Husband no relief because the modification he seeks would not be consistent with the provisions of the 1990 Order.

**¶18** Accordingly, the superior court properly refused Husband's *de facto* request to modify the 1999 Order to make a downward adjustment to Wife's share of his military retirement, and did not abuse its discretion in denying Husband's motion for new trial based on the same request. We affirm the superior court's order that Wife is entitled to 25.8% of Husband's full military retirement pay from the date of his retirement forward.[3]

---

[3] The parties vigorously dispute on appeal whether, under *Koelsch v. Koelsch*, 148 Ariz. 176, 181 (1986), the marital community should share only in that component of military retirement pay that corresponds with the rank of the military spouse as of the date of the dissolution. If the 1999 Order had been entered over Husband's objection and he had appealed the order,

**B.      The Survivor Benefit Plan.**

¶19      Pursuant to the SBP, a former spouse may continue to receive a monthly benefit following the death of a service member. *See* 10 U.S.C. §§ 1447-1455 (2016).   A court order entered as part of a dissolution proceeding may require a service member to elect SBP coverage for a former spouse. *See* 10 U.S.C. § 1450(f)(4).

¶20      The 1999 Order provided the following survivor's benefit for Wife:

> Former Spouse-type RCSBP shall be established, with [Wife] as sole beneficiary, at the earliest time [Husband] is, by law or regulation, hereafter permitted to do so, and in no event later than the time, shortly before his age 60, he becomes eligible to apply for MRP.  Full retired pay shall be established as "base amount" therefor.  [Husband] is hereby directed to execute, at the earliest possible time permitted, all documents necessary to effect such RCSBP.   Nothing contained herein shall preclude [Wife] from making request for "deemed election" pursuant to 10 U.S.C. § 1450(f)(3).

This language from the 1999 Order reflects the terms of the parties' marital settlement agreement.  (The parties agree that given that Husband retired while he was on active duty, rather than as a member of the reserve, SBP, rather than "RCSBP," is the relevant survivor's program.)

¶21      The superior court determined Wife is entitled to receive "her portion" of Husband's SBP and ordered that Husband "shall cooperate in appealing the denial of the Survivor Benefit Plan" to Wife.  On appeal,

---

he could have presented that issue on appeal.  But Husband did not appeal the order, which was entered more than ten years after *Koelsch* was decided, and the order became final.  In *Koelsch*, there was no property settlement agreement between the parties, and the court of appeals devised a formula for apportioning husband's retirement benefits.  *See* 148 Ariz. at 178-79. Conversely, the parties here entered into a property settlement agreement apportioning Husband's military retirement that was memorialized in a stipulated order.  *See Moser v. Moser*, 117 Ariz. 312, 314 (App. 1977) ("A husband and wife can, by agreement, transmute separate property to community property.").

Husband argues that Wife's SBP should be based on his rank and pay at the time of dissolution.

**¶22**  For the reasons set forth above, we conclude that, under the 1999 Order, Wife's SBP benefit is to be calculated based on Husband's rank at the time he retired, rather than, as Husband contends, his rank at the time of the dissolution.[4]  Accordingly, we affirm the superior court's order to that effect.

## CONCLUSION

**¶23**  For the foregoing reasons, we affirm the superior court's order, except we vacate as moot that portion holding that Husband "erred" by not taking appropriate steps to allow Wife to receive SBP benefits.

**¶24**  We decline Wife's request for attorney's fees on appeal pursuant to A.R.S. § 25-324 (2016).  The record contains insufficient evidence of the parties' respective financial situations, and Husband did not take unreasonable positions on appeal.  We grant Wife her costs on appeal contingent upon compliance with Arizona Rule of Civil Appellate Procedure 21.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama

---

[4]  The superior court also found that Husband had erred by not "checking the box for [Wife] to receive her former spouse portion of his Survivor Benefit Plan."  On appeal, Husband disputes this ruling.  Because the record is not clear regarding whether Husband took the steps necessary to elect SBP coverage, and DFAS now has reinstated Wife's coverage, we vacate this portion of the superior court's ruling as moot.